IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. WALKER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 19-cv-617-DWD |
| | ) |
| KEVIN KINK, et al., | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Defendants Trey Brashear and Ethan McQueen have filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 106). For the reasons delineated below, the Court **GRANTS** the Motion for Summary Judgment.

**I.     INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Kevin Kink ("Kink"), an inmate in the custody of the Illinois Department of Corrections, brings this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. On November 18, 2021, the Court conducted a merit review of Kink's Third Amended Complaint and found that Kink had adequately alleged the following claims:

    Count 3:     First Amendment claim against Brashear and McQueen for selectively shaking down Plaintiff's cell in May 2018 in retaliation for filing grievances.

    Count 6:     Loy and John Doe No. 1 delayed and mishandled Walker's grievance in retaliation for Walker using the grievance process.

On January 11, 2023, the Court dismissed Count 6, along with the defendants named in that Count. (Doc. 91). Accordingly, Kink's First Amendment claim against Brashear and McQueen is the only remaining claim.

## II.   APPLICABLE LAW

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.' " *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Liberty Lobby*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Liberty Lobby*, 477 U.S. at 247, or by "some metaphysical doubt as to the material

facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Liberty Lobby,* 477 U.S. at 252.

### III.   UNDISPUTED MATERIAL FACTS[1]

During the events that are the subject of this case, Plaintiff was housed at Lawrence Correctional Center. (Docs. 106 and 111). Plaintiff had a history of filing grievances, including a grievance he filed on March 13, 2018. (Doc. 111, Exhibit B). Brashear and McQueen were employed by IDOC during the relevant period. (Docs. 106 and 111). McQueen conducted a search of Plaintiff's cell on May 28, 2018 ("May 28, 2018 Shakedown"). (Docs. 106, 111, and 106-1). Brashear witnessed the search. (Doc. 106-1). McQueen wrote a disciplinary report following the May 28, 2018 Shakedown. (Doc. 106-1). McQueen confiscated one pair of "damaged/altered Conair trimmers," and Plaintiff was charged with Offense No. 202 (damage or misuse of property, a mattress) and Offense No. 308 (contraband/unauthorized property, a pair of trimmers). (Doc. 106-2). Plaintiff pled not guilty to damage or misuse of property. (Docs. 106, 111, and 106-2). Plaintiff pled guilty to having contraband/unauthorized property, stating "the trimmers are not really altered and they are his." (*Id.*). Plaintiff was found not guilty as to Offense No. 202 (damage or misuse of property) and guilty as to Offense No. 308 (contraband/unauthorized property). (*Id.*). Plaintiff was given one-month of commissary restriction. (*Id.*).

---

[1] Unless otherwise indicated, the following facts are undisputed.

In Plaintiff's experience, the assigned wing officer conducts shakedowns. (Doc. 111, pg. 14). Prior to the May 28, 2018 Shakedown, Brashear was assigned to Plaintiff's wing and was the individual who conducted searches of Plaintiff's cell. (*Id.*). An internal affairs officer told Plaintiff McQueen was not assigned to his wing on May 28, 2018. When McQueen searched Plaintiff's cell, he told Plaintiff he was conducting a 30-day shakedown. McQueen's disciplinary ticket, adjustment committee report, and Plaintiff's grievance pertaining to the May 28, 2018 Shakedown describe the search as a 30-day search. (Docs. 61, pg. 13, 106-1, and 106-2).

Pursuant to the Illinois Administrative Code, searches of a person in custody's housing may occur at any time. 20 Ill. Admin. Code. § 501.220(b)(1) ("All committed persons and their clothing, property, housing and work assignments are subject to search at any time."). In addition, Illinois Department of Corrections Administrative Directive No. 05.01.111 provides that every cell must be searched at least every 60 days. (Doc. 106-3).[2]

---

[2] In their statement of undisputed material facts, Defendants indicate that the "May 28, 2018 search was a 30-day cell shakedown." The underlying disciplinary documents and Plaintiff's grievance regarding the shakedown support this contention. (Docs. 106-1; 106-2; and 61, pg. 13). Plaintiff states that he "contest[s]" this fact on the grounds that, pursuant to Illinois Department of Corrections Administrative Directive No. 05.01.111 the search "should have been done at 60 days not 30." Plaintiff also argues that conducting a 30-day search somehow conflicts with this IDOC directive and/or that the referenced IDOC directive conflicts with 20 Ill. Admin. Code § 501.220(b)(1), which allows searches at any time. Plaintiff misconstrues Administrative Directive No. 05.01.111. That Directive provides that a cell must be searched *at least* every 60 days, not that it may only be searched every 60 days. Plaintiff's misunderstanding of this administrative directive and/or his opinions regarding applicable regulations do not establish a genuine dispute as to the claim that the May 28, 2018 Shakedown was a 30-day shakedown.

## IV.   ANALYSIS

Plaintiff alleges that McQueen retaliated against him for writing grievances by searching his cell on May 28, 2018, and that Brashear is subject to liability because he was present during the shakedown and/or because he is a supervisor.

As previously noted, to prevail on his First Amendment Claim, Plaintiff must show that "(1) he engaged in an activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). If Plaintiff satisfies these elements, the burden shifts to Defendants to rebut the causal inference with evidence showing that they would have taken the same action without any retaliatory motive. *See* Mays v. Springborn, 575 F.3d 643, 650 (7th Cir. 2009); *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005–06 (7th Cir. 2005). Defendants cannot be found liable if they would have conducted the shakedown no matter what. *Antoine v. Ramos*, 497 F. App'x 631, 633-34 (7th Cir. 2012).

If Defendants provide legitimate and non-retaliatory reasons for their actions, then the burden shifts back to Plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus. *See, e.g.*, *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012); *Zellner v. Herrick,* 639 F.3d 371, 379 (7th Cir. 2011). "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner*, 639 F.3d at 379. "If retaliation is not the but-for-cause of the [bad action], 'the claim fails for lack of causal connection between unconstitutional motive and resulting harm,

despite proof of some retaliatory animus in the official's mind.'" *Thayer*, 705 F.3d at 252. (quoting *Hartman v. Moore*, 547 U.S. 250, 260, 126 S. Ct. 1695, 1695 (2006)). "It may be dishonorable to act with an unconstitutional motive ... but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Id.*

For purposes of summary judgment, Defendants concede that filing grievances is a protected activity. Thus, the first element is met. The Court notes that Plaintiff's responsive pleading references his "history" of filing grievances, as well as multiple specific grievances. Except for a grievance filed on March 13, 2018 ("March 13, 2018 Grievance") (Doc. 111, Exhibit B), the other specified grievances occurred after the shakedown at issue in this case. In evaluating Plaintiff's retaliation claim, the Court considers only protected activity that occurred prior to the shakedown, namely Plaintiff's alleged "history" of filing grievances prior to the May 28, 2018 Shakedown and the grievance submitted on March 13, 2018.

The Court also finds sufficient evidence that Plaintiff suffered a deprivation likely to deter First Amendment activity in the future—a cell shakedown, denial of access to his personal property, and punishment with a loss of commissary privileges. *See Antoine*, 497 F. App'x at 633 (considering a shakedown and resultant disciplinary charges as deprivations for purposes of a retaliation claim). A sham disciplinary action —or even a disciplinary action that would have been proper when taken for a different reason— violates an inmate's rights if the discipline is imposed in retaliation for the exercise of a constitutional right. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir.2012); *Bridges v.*

6

*Gilbert,* 557 F.3d 541, 552 (7th Cir.2009); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005). *See also Martin v. Nicholson*, 2019 WL 6338062 at * 2 (S.D. Ind. 2019) ("shakedowns may occur regularly, but it seems safe to assume they are not welcome by inmates, and thus a reasonable jury could assume a retaliatory shakedown would dissuade an inmate of ordinary firmness from engaging in protected activity.").

Plaintiff has not shown, however, that retaliatory animus on the part of either Defendant motivated the May 28, 2018 Shakedown or the subsequent disciplinary action. Plaintiff – at most – asserts that the timing of events, coupled with the fact that it was unusual for McQueen, who was not assigned to Plaintiff's wing, and not Brashear, who was assigned to Plaintiff's wing, to conduct the search.

First, "[s]uspicious timing alone is rarely sufficient to defeat a motion for summary judgment," *Silverman v. Bd. of Educ. of City of Chi.,* 637 F.3d 729, 736 (7th Cir.2011). Here, the temporal proximity is weak at best; the March 13, 2018 Grievance predates the shakedown by approximately two months. This, standing alone, does not trigger a causal inference. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action."). *Sauzek v. Exxon Coal USA Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second. Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another.") (internal citation omitted).

Plaintiff also suggests there is something untoward about McQueen, and not Brashear, conducting the search, and that this, coupled with the timing, demonstrate a causal connection. But Plaintiff's suspicions rest entirely on speculation, not evidence, and speculation is not enough to defeat a motion for summary judgment. *See Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) ("[Plaintiff] must produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have."); *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (Speculation about a defendant's retaliatory motive cannot create a genuine issue of material fact).

Second, and perhaps more importantly, there cannot be adverse, retaliatory action without *knowledge* of protected conduct. *Morfin v. City of East Chi.*, 349 F.3d 989, 1005 (7th Cir. 2003) ("The protected conduct cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity") (internal quotations and citations omitted). There is no evidence that either Defendant knew about the March 13, 2018 Grievance. A grievance which, notably, did not pertain to either Defendant. Nor is there any evidence that Defendants knew about Plaintiff's alleged history of writing grievances. Moreover, any contention that Defendants must have known about Plaintiff's history of filing grievances, is nothing more than speculation that these *particular* Defendants were aware of his protected activity, which is not enough to survive summary judgment. *Luckie v. Ameritech Corp.,* 389 F.3d 708, 715 (7th Cir.2004) ("It is not sufficient that [Defendants] *could* or even *should* have known about [Plaintiff's First Amendment activity they] must have had actual knowledge of the [activity] for [their] decisions to be retaliatory.") (emphasis in original).

8

Finally, even if Plaintiff had established a causal link between his protected conduct and the adverse action, his claim would fail because he has not established that Defendants' proffered reason for the shakedown – a routine 30-day search - is pretextual. A defendant cannot be found liable for retaliation where he can show the deprivation would have occurred even if the alleged retaliatory motive did not exist. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013). Plaintiff does not dispute that prison guards are always free to search an inmate's cell, s*ee* Ill. Admin. Code tit. 20 ¶ 501.220(b)(1), or that IDOC policy mandates that each prisoner's cell must be searched "no less than one time every 60 days." Illinois Department of Corrections Administrative Directive No. 05.01.111. Further, the disciplinary documents in the record indicate that the May 28, 2018 Shakedown was a routine 30-day search. (Doc. 106-1, disciplinary report referring to the search as a 30-day shakedown); (Doc. 106-2, disciplinary ticket describing the search as a 30-day shakedown); (Doc. 61, pg. 13, Plaintiff's grievance describing the search as a 30-day cell shakedown). This type of evidence demonstrates that the shakedown would have occurred regardless of any improper motive, and Plaintiff has not presented any evidence to the contrary.

In summary, Plaintiff has failed to establish a causal connection between his First Amendment activity and the May 28, 2018 Shakedown. Additionally, even if Plaintiff had made a *prima facie* showing of retaliation, his claim would fail because Defendants' assertion that the search was a routine 30-day search is uncontradicted. Accordingly, the Court will grant summary judgment in Defendants' favor.

## V.    DISPOSITION

9

For the foregoing reasons, the Motion for Summary Judgment (Doc. 106) is **GRANTED**, and this action is **DISMISSED** with Prejudice. The Clerk of the Court is directed to enter judgment in Defendants' favor and against Plaintiff. All deadlines and settings on the Court's calendar are vacated.

**SO ORDERED.**

Dated: January 16, 2025

DAVID W. DUGAN
United States District Judge